UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

CITADEL BROADCASTING CORP.,

              Plaintiff,

   - against -

JOHN MITCHELL DOLAN,

              Defendant.

------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 6914 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/09

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

John Mitchell Dolan moves to dismiss Citadel Broadcasting Corporation's Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Dolan moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For reasons to be discussed, the motion is denied.

## II.    BACKGROUND

In June 2007, Citadel purchased the ABC Radio Network and 22 radio stations ("Major Market Station Group") from the Walt Disney Company in a

1

merger agreement.[1]  Before then, Dolan was President of the ABC Radio Major

Market Station Group, a position he retained after the transaction between Citadel

and Disney closed.[2]

### A.    The Severance Agreement

In June 2007, Dolan and Radio Networks, a wholly-owned subsidiary

of Citadel, entered into a letter agreement ("Agreement") concerning Dolan's

severance package.  Specifically, the Agreement provides that, upon a "Triggering

Event," Radio Networks is obligated to make a special payment to Dolan equal to

two years base pay and to provide Dolan with no more than two years of medical

and dental benefits.[3]  The Agreement defines a "Triggering Event" as either

termination of employment "other than on account of . . . Cause", or a

"Constructive Termination."[4]  "Cause" is defined to include "gross negligence,

willful malfeasance or willful gross misconduct in connection with [Dolan's]

---

[1]      *See* Amended Complaint ("Am. Compl.") ¶¶ 9-10.  *See also*
Defendant John Mitchell Dolan's Memorandum of Law in Support of Motion to
Dismiss Plaintiff's Complaint, Or, in the Alternative, For Summary Judgment
("Def. Mem.") at 3.

[2]      *See* Am. Compl. ¶¶ 9-10; Def. Mem. at 3.

[3]      6/12/07 Letter Agreement Between Griffith W. Foxley, Vice President
of Radio Networks, LLC and John Mitch Dolan ("Agreement") ¶¶ 1, 4, Ex. B to
9/30/09 Affidavit of Robert Kraus, defendant's counsel ("9/30/09 Kraus Aff.").

[4]      *Id.* ¶ 2.

employment," as well as Dolan's "having committed a breach of a written agreement with [Radio Networks], Citadel or any of their affiliated entities with respect to confidentiality, non-competition, non-solicitation or a similar restrictive covenant . . . ."[5]

Arbitration is required for "[a]ny dispute or controversy . . . in any way arising out of, related to, or connected to this letter agreement . . . ."[6] "The parties shall be precluded from bringing or raising in court or any other forum any dispute that was or could have been brought or raised pursuant to this paragraph."[7]

Radio Networks is obligated under the Agreement to indemnify Dolan against "all reasonable, out-of-pocket expenses (including attorneys' fees)" and to reimburse any such expense which is "incurred by [Dolan] in connection with any good faith claim asserted against or in connection with any action brought by [him] related to or arising our [sic] of [his] claim for Severance Payment."[8]

## B.    Arbitration of the Agreement

In January 2009, Farid Sulemen, Citadel's Chief Executive Officer,

---

[5]    *Id.* ¶ 2(a).

[6]    *Id.* ¶ 5.

[7]    *Id.*

[8]    *Id.* ¶ 6.

3

fired the general manager in Los Angeles, John Davison, and hired a new general

manager, Bob Moore, without consulting Dolan.[9]  Suleman set Moore's salary

equal to Dolan's, though Moore reported to Dolan.[10]  In February 2009, Dolan

resigned.[11]  On March 5, 2009, Dolan filed a demand for arbitration against Radio

Networks, claiming he was entitled to severance benefits under the Agreement

because he had been constructively terminated due principally to Suleman's firing

of Davison and hiring of Moore.[12]

According to Citadel, "[d]uring discovery, Radio Networks learned

that Dolan had solicited Sean Hannity . . . one of Citadel's most lucrative on-air

personalities, to enter into a separate and independent business venture with him

while he was supposed to be attempting to renegotiate Hannity's contract with

Citadel."[13]  Radio Networks moved for summary judgment based on this "after-

---

[9]     *See* 10/20/09 Partial Final Award, *Dolan v. Radio Networks*, Case No.
13 166 00615 09 (American Arbitration Association) ("Partial Final Arbitration
Award") at 4, Ex. A to 10/26/09 Affidavit of Robert Kraus, defendant's counsel.

[10]    *See id.*

[11]    *See id.* at 5.

[12]    *See id.* at 6. *See also* Memorandum of Law in Opposition to
Respondent's Motion for Summary Judgment [in the Arbitration] ("Pet. Opp.") at
8-9, Ex. 1 to 10/19/09 Affidavit of Sarah E. Bouchard, plaintiff's counsel.

[13]    Plaintiff Citadel Broadcasting Corporation's Memorandum of Law in
Opposition to Defendant's Motion to Dismiss or for Summary Judgment ("Pl.
Mem.") at 2. *Accord* Memorandum of Law in Support of Respondent Radio

4

acquired" evidence, arguing that Dolan's attempt to lure Hannity away from

Citadel served as a *complete defense* to Dolan's severance claims.[14]

The arbitrator denied Radio Networks's motion because material facts

were in dispute: "Certainly, the context in which [Dolan allegedly attempted to

poach Hannity] as well as the precise words used would be essential to determine

whether Dolan was guilty of misconduct sufficient to forfeit his rights under the

Letter Agreement. That context can only be provided upon a full record at the

hearing."[15]

Radio Networks withdrew its misconduct defense from the arbitration,

electing to instead pursue tort claims in federal court.[16] At the arbitration hearing,

---

Networks, LLC's Motion for Summary Judgment [in the Arbitration] ("Res. Mem.") at 6-7, Ex. F to 9/30/09 Kraus Aff.

[14]    *See* Res. Mem. at 10 ("While he was still employed by Citadel, Dolan committed serious acts of misconduct that [Radio Networks] did not learn about until after he resigned. Had Citadel learned of these misdeeds earlier, Citadel would have terminated Dolan's employment for cause and he would have had no basis to claim severance under [the Agreement]. As a result, Dolan is barred from recovering . . . . Under New York law, an employer can *defend* against a wrongful discharge claim on the basis of facts that were unknown to it at the time of discharge." (emphasis added; citing *Bompane v. Enzolabs, Inc.*, 608 N.Y.S.2d 989, 993 (Sup. Ct. 1994))).

[15]    8/4/09 Order, *Dolan v. Radio Networks*, Case No. 13 166 00615 09 (American Arbitration Association) ("Arbitration Order") at 2, Ex. I to 9/30/09 Kraus Aff.

[16]    *See* Partial Final Arbitration Award at 5; Pl. Mem. at 2.

Radio Networks defended itself exclusively on the grounds that there was no constructive termination. On October 20, 2009, the Arbitrator issued a Partial Final Award determining that Dolan was constructively discharged and, therefore, owed contract damages in the amount of $850,000, statutory interest, and attorneys' fees and costs.[17]

### C.  Proceedings in this Court

Citadel filed this action on August 5, 2009, invoking diversity jurisdiction.[18] According to the Complaint, shortly after Citadel took control of the Major Market Station Group, Dolan was appointed to lead Citadel's effort to renegotiate the terms of Hannity's contract.[19] At the time, Hannity was a bankable personality for ABC Radio.[20] Instead of renegotiating or extending Hannity's contact, "Dolan expressed [to Hannity] disappointment about the merger and that ABC Radio was under new control, and he also expressed deep concerns about working for Citadel and about its management."[21] Dolan also "told Hannity that he would be a 'fool' not to exercise his right to terminate his contact and then asked

---

[17]     *See* Partial Final Arbitration Award at 6-9.

[18]     *See* Complaint ("Compl.") ¶ 6.

[19]     *See id.* ¶ 12.

[20]     *See id.* ¶ 11.

[21]     *Id.* ¶ 13.

Hannity and WABC Program Director Phil Boyce whether they would be interested in syndicating Hannity's show independently of Citadel."[22]  At the end of this conversation, which took place at a private social event at Hannity's home, Dolan asked Hannity and Boyce to honor a "'cone of silence' with respect to these discussions."[23]  Hannity is no longer employed by Citadel or any of its subsidiaries.[24]

Dolan made other statements during his employment by Citadel that were contrary to Citadel's business interests and otherwise failed to use his best efforts to promote Citadel's interests.[25]  For example, Dolan said Citadel's Board of Directors was planning to replace Suleman with Dolan as CEO of Citadel.[26]

Based on these factual allegations, the Complaint states two causes of action: (1) breach of the duty of loyalty;[27] and (2) tortious interference with prospective contractual/economic relations.[28]  In addition to declaratory relief,

---

[22]  *Id.*

[23]  *Id.* ¶ 14.

[24]  *See id.* ¶ 16.

[25]  *See id.* ¶ 17.

[26]  *See id.*

[27]  *See id.* ¶¶ 18-23.

[28]  *See id.* ¶¶ 24-31.

compensatory and punitive damages, and fees and costs, the Complaint prays for

the forfeiture by Dolan to Citadel of "all compensation, benefits (including any

severance benefits, if any) and other economic benefits of any kind that he or his

representatives received from Citadel at any time after his first disloyal act[.]"[29]

Dolan sought the Court's permission to file a motion to dismiss,

arguing that Citadel's claims were subject to mandatory arbitration under the

Agreement and otherwise improper. At a pre-motion conference held on

September 3, 2009, I informed Citadel of my view that it should not have a second

opportunity to litigate Dolan's right to severance, which was the subject of then-

pending arbitration.[30] Citadel agreed that it would not seek to recoup any

severance benefits awarded to Dolan by the arbitrator.[31] Apart from that, however,

I advised that it was my preliminary view that Citadel's claims were properly

brought in this forum.[32] Accordingly, I requested that Citadel amend its Complaint

to eliminate its demand to recover severance benefits from Dolan.[33]

On September 9, 2009, Citadel filed its Amended Complaint, which

---

[29]    *Id.* at Prayer ¶ (e).

[30]    *See* 9/3/09 Transcript at 13-14.

[31]    *See id.*

[32]    *See id.* at 17.

[33]    *See id.* at 18-19.

mirrors the original Complaint except that Citadel now prays for forfeiture by Dolan of "all compensation, benefits and other economic benefits of any kind that he or his representatives received from Citadel at any time after his first disloyal act, excluding any severance benefits that may be awarded to Dolan in [the arbitration]."[34]

Instead of answering the Amended Complaint, Dolan filed the instant motion.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss:  Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when the federal court "lack[s] . . . jurisdiction over the subject matter." Federal courts are courts of limited jurisdiction and may not entertain matters over which they do not have subject matter jurisdiction.[35]  The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence.[36]

In considering a motion to dismiss for lack of subject-matter jurisdiction, the court must assume the truth of the material factual allegations

---

[34]     Am. Compl. at Prayer ¶ (e).

[35]     *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001).

[36]     *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007).

contained in a complaint.[37]  However, "jurisdiction must be shown affirmatively,

and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it."[38]  In fact, "where jurisdictional facts are placed in dispute,

the court has the power and obligation to decide issues of fact by reference to

evidence outside the pleadings, such as affidavits."[39]

Citadel asserts subject-matter jurisdiction pursuant to Section

1332(a)(1) of Title 28 of the United States Code, which confers jurisdiction on the

federal district over cases "where the matter in controversy exceeds $75,000 . . .

and is between . . . citizens of different States[.]"

## B.     Motion to Dismiss:  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal

for "failure to state a claim upon which relief can be granted[.]"  In reviewing a

motion to dismiss pursuant to Rule 12(b)(6), a court must "accept as true all of the

---

[37]     *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d
Cir. 2006) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir.
2004)).

[38]     *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.
1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

[39]     *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

factual allegations contained in the complaint"[40] and "'draw[ ] all reasonable inferences in [a] plaintiff['s] favor.'"[41]  However, a court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[42]

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[43]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[44]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility

---

[40]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 572 (2007).  *Accord Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949-50 (2009)).

[41]    *Selevan*, 584 F.3d at 88 (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).

[42]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).  *Accord Iqbal*, 129 S. Ct. at 1949.

[43]    *Accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

[44]    *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556-57, 570)).

[45]    *Id.* (quotation marks omitted).

11

that a defendant has acted unlawfully."[46]  Pleading a fact that is "merely consistent with a defendant's liability" does not satisfy the plausibility standard.[47]  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief."[48]

On deciding a motion to dismiss, the "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"[49]  Additionally, "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."[50]  A court may look to such materials on a Rule 12(b)(6) motion to dismiss.[51]

## C.    Summary Judgment

---

[46]    *Id.* (quotation marks omitted).

[47]    *Id.* (quotation marks omitted).

[48]    *Id.* at 1950 (quotations marks and citation omitted).

[49]    *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002)).

[50]    *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[51]    *Staehr v. The Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[52] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[53] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[54]

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[55] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[56] and it "'may not rely on conclusory allegations or

---

[52]   Fed. R. Civ. P. 56(c)(2).

[53]   *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[54]   *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[55]   *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[56]   *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

unsubstantiated speculation.'"[57]   However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[58]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[59]   However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[60]   "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[61]

---

[57]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[58]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[59]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[60]     *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[61]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).   *Accord Anderson*, 477 U.S. at 249.

## IV.   DISCUSSION

Dolan argues that Citadel's claims for breach of the duty of loyalty and tortious interference are subject to arbitration under the Agreement, and are barred under the doctrine of *res judicata*.  Because resolution of the issues presented requires the Court to construe a contract not mentioned by, let alone incorporated into, the Amended Complaint, Dolan's arguments are properly considered under Rule 56 (summary judgment), rather than Rule 12 (dismissal). Even if Dolan's claims were appropriately addressed under Rule 12, I would reject them for the same reasons articulated below.[62]

### A.   Citadel's Claims Are Outside the Scope of the Agreement

---

[62]   There is a "lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Tyler v. City of New York*, No. 05 Civ. 3620, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (cataloging cases and secondary texts). *Accord* 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 1998) (comparing disparate authority on whether actions may be dismissed under Rule 12(b)(1) for failure to arbitrate).  As for Dolan's *res judicata* challenge, it "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

Resolution of Dolan's motion is appropriate under Rule 56, rather than Rule 12, because the Agreement is not incorporated into the Amended Complaint.  Even if Dolan's motion were appropriately considered under Rule 12, instead of or in addition to Rule 56, I would not need to resolve whether Rule 12(b)(1), Rule 12(b)(6), or both applied, because Dolan's argument may be rejected under each rule.

Dolan first contends that Citadel's claims are related to the Agreement

and, therefore, arbitrable.  When interpreting the application of a particular

arbitration provision, a court should initially "classify the particular clause as either

broad or narrow."[63]

> Next, if reviewing a narrow clause, the court must
> determine whether the dispute is over an issue that "is on its
> face within the purview of the clause," or over a collateral
> issue that is somehow connected to the main agreement that
> contains the arbitration clause.  Where the arbitration clause
> is broad, "there arises a presumption of arbitrability" and
> arbitration of even a collateral matter will be ordered if the
> claim alleged "implicates issues of contract construction or
> the parties' rights and obligations under it."[64]

Here, the arbitration clause mandates arbitration for "[a]ny dispute or

controversy . . . in any way arising out of, related to, or connected to this letter

agreement . . . ."[65]  This is a broad arbitration provision.[66]  Nevertheless, arbitration

---

[63]     *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252
F.3d 218, 224 (2d Cir. 2001).

[64]     *Id.* (citations omitted and quoting *Collins & Aikman Prods. Co. v.
Building Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).  *Accord International Ass'n of
Machinists and Aerospace Workers, AFL-CIO v. General Elec. Co.*, 406 F.2d
1046, 1048 (2d Cir. 1969) ("[A]rbitration should be ordered unless it may be said
with positive assurance that the [broad] arbitration clause is not susceptible of an
interpretation that covers the asserted dispute." (quotation marks omitted)).

[65]     Agreement ¶ 5.

[66]     *See, e.g.*, *Collins*, 58 F.3d at 18 (determining arbitration clause was
broad were it stated "[a]ny claim or controversy arising out of or relating to this
agreement shall be settled by arbitration"); *Abram Landau Real Estate v. Bevona*,

16

is required only for disputes connected to the Agreement, which addresses

exclusively "the terms of [Dolan's agreement with [Radio Networks] . . . with

respect to the special severance payment described [therein]."[67] As the arbitrator

correctly ruled:  "By its terms, the Letter Agreement makes it quite clear that the

scope of the arbitration is limited to issues related to the special severance

payment.  No other rights or interests are afforded to Dolan under the Letter

Agreement except those associated with the special severance."[68]

　　　　Dolan insists Citadel's claims are presumptively arbitrable because

"the allegations of misconduct fall directly within the Agreement's definition of

'cause' for termination[.]"[69] While the misconduct allegations do fall within the

Agreement's definition of "Cause" — indeed, Radio Networks initially defended

against Dolan's severance claim with the misconduct allegations — the cause

provision is nothing more than an eligibility clause that narrows the circumstances

under which the severance payment must be paid.  More importantly, Citadel's tort

---

123 F.3d 69, 71 (2d Cir. 1997) (determining arbitration clause was broad where it
stated "Contract Arbitrator shall have the power to decide all differences arising
between the parties to this agreement as to interpretation, application or
performance of any part of this agreement").

[67]　　　Agreement at 1.

[68]　　　Arbitration Order at 2-3.

[69]　　　Def. Mem. at 2. *Accord id.* at 11.

claims do not "implicate[] issues of contract construction or the parties' rights and obligations under it."[70]  Having amended its Complaint to remove the recovery of severance benefits from the requested relief, Citadel no longer seeks to litigate any issues related to severance, and no other rights or interests are afforded under the Agreement.  As a result, the cause provision does not provide the nexus between the Agreement and Citadel's claims that is essential to holding Citadel's claims within the Agreement's arbitral mandate.[71]

A contrary determination — that the cause provision requires arbitration of Citadel's claims — taken to its logical conclusion would require arbitration of a termination for cause even in the absence of a claim for severance benefits.  This would be an untenable result in light of the fact that the Agreement concerns the singular overarching and core issue of severance benefits.  Thus, while the misconduct allegations may have provided *a defense* to Dolan's claim for severance benefits, that does not expand the scope of the Agreement's arbitration provision to all issues related to termination for cause.  The question of severance

---

[70]    *Collins & Aikman Prods. Co*, 58 F.3d at 23.

[71]    *See, e.g.*, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (holding a defamation claim did not fall within the arbitration clause of an agreement limited to "core issues of dyeing and finishing goods contracts"); *Collins*, 58 F.3d at 22 (holding a claim for tortious interference with third-party employment contracts was not arbitrable where there was "no logical connection" between the claim and the sales agreement that contained the arbitration provision).

18

benefits must be in play before arbitration is required under the Agreement.

Dolan also contends that Radio Networks's "prior submission of Dolan's alleged misconduct as a defense in the arbitration bars Citadel from now proceeding in this forum [because the Agreement] specifically precludes the pursuit in court of any dispute that 'was or could have been raised' [under the arbitration provision]."[72] However, Citadel did not assert an affirmative claim based on the misconduct allegations in the arbitration proceeding. Moreover, because Citadel's tort claims are unrelated to the special severance payment, Citadel could not have made these claims in that forum.[73] That Citadel initially defended against Dolan's severance claim with the misconduct allegations does not mean that Citadel's tort claims in any way involve issues related to the severance. Indeed, Citadel amended its Complaint precisely to exclude severance issues from this case.

Dolan argues "Citadel cannot avoid its obligation to arbitrate simply by amending its complaint, as it has done, to remove the severance pay that Dolan sought in the arbitration from the damages Citadel requests in this litigation."[74]

---

[72]     Def. Mem. at 2 (quoting Agreement ¶ 5). *Accord id.* at 12.

[73]     *See, e.g.*, Arbitration Order at 2-3 (holding the arbitrator did not have jurisdiction over "any claim unrelated to the special severance payment").

[74]     *Id.* at 2.

According to Dolan, "[a]s the claims in this litigation are factually identical to the misconduct allegations raised in the arbitration, and the misconduct alleged in the amended complaint falls well within the Agreement's definition of cause, they clearly 'touch matters' related to the Agreement and must be arbitrated."[75]

Dolan's argument is not persuasive. When Citadel's original litigation sought to recover Dolan's severance benefits, the tort claims may have touched matters related to the Agreement. However, the Amended Complaint no longer touches matters related to the Agreement because severance is no longer at issue. Additionally, the facts underlying Dolan's arbitral claim are completely different and wholly disconnected from the facts underlying Citadel's tort claims. Dolan's claim to severance concerned Suleman's January 2009 decision to replace a general manager under Dolan without consulting Dolan. The factual allegations underlying Citadel's present claims concern a conversation between Dolan, Hannity, and Boyce, which allegedly took place after Citadel purchased the Major Market Station Group in June 2007 — long before the circumstances leading to

---

[75]     Def. Mem. at 14 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). In *Genesco, Inc.*, the Second Circuit explained: "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' [] agreement[], then those claims must be arbitrated, whatever the legal labels attached to them." 815 F.2d at 846.

Dolan's resignation arose. Furthermore, when Suleman fired Davison and hired Moore in January 2009, Citadel did not even know of Dolan's efforts with respect to Hannity — Citadel only learned of Dolan's alleged misconduct during discovery in the arbitration proceeding. Though Radio Networks raised and retracted the misconduct defense in the arbitration, Citadel's amended claims are unrelated to the special severance package — a connection that is indispensable to the applicability of the Agreement's arbitration provision.

Finally, Dolan argues that because the Amended Complaint seeks "the return of *all* economic benefits received by Dolan or its agents from the date of the alleged misconduct, Citadel's Amended Complaint places substantial items of damages in controversy for a second time, i.e, Dolan's right to obtain indemnification for all counsel fees and costs and his right to various health care coverage and other benefits."[76] However, Citadel has expressly excluded "any severance *benefits* . . . awarded to Dolan in the arbitration" from its prayer for relief.[77] Contrary to Dolan's argument, this exclusion broadly applies not only to the *payment* of two years salary but to *all benefits* awarded by the arbitrator under the Agreement, including attorneys' fees, costs, and health care.

**B.    Citadel's Claims Are Not Barred Under *Res Judicata***

---

[76]    Def. Mem. at 2. *Accord id.* at 14.

[77]    Am. Compl. at Prayer ¶ (e) (emphasis added).

Dolan asserts that Citadel's claim are barred by the doctrine of *res judicata*. This doctrine "serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings."[78]

> To prove that a claim is precluded under this doctrine, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."[79]

"Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims.'"[80] "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"[81] "As this 'same transaction' test indicates, the 'could have been'

---

[78]     *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001).

[79]     *Id.* at 91 (alteration in original; quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)).

[80]     *Id.* (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)).

[81]     *Interoceanica Corp.*, 107 F.3d at 90 (quoting Restatement (Second) of Judgments § 24(b)).

language of the third requirement is something of a misnomer."[82]

> The question is not whether the applicable procedural rules
> permitted assertion of the claim in the first proceeding;
> rather, the question is whether the claim was sufficiently
> related to the claims that were asserted in the first
> proceeding that it *should have been asserted* in that
> proceeding.   That said, showing that the applicable
> procedural rules did not permit assertion of the claim in
> question in the first action of course also suffices to show
> that the claim is not barred in the second action.[83]

Dolan argues that Citadel's claims are barred by the Partial Final

Award in the arbitration because they are "related in origin to [Radio Networks's]

defense in the arbitration and form a convenient trial unit because both are

inextricably related to the Agreement's express provisions."[84]  He further maintains

that there is "no meaningful difference between [Radio Networks's] arbitral

misconduct defense and Citadel's tort claims because it is the factual allegations

that are determinative."[85]

This argument fails.  *First*, an affirmative defense is not a claim for

relief.  Even if it were, Radio Networks's affirmative defense was not fully

litigated on the merits; rather, after the arbitrator denied summary judgment on the

---

[82]     *Pike*, 266 F.3d at 91.

[83]     *Id.* (emphasis added and citation omitted).

[84]     Def. Mem. at 16.

[85]     *Id.* at 17.

23

misconduct defense, Radio Networks withdrew it.  Furthermore, Dolan is incorrect

to frame the *res judicata* inquiry as whether the factual allegations underlying the

misconduct defense and the current claims are related.  Rather, the doctrine of *res*

*judicata* would bar Citadel's claims only if "the claim[s] [are] sufficiently related

to the claims that were asserted in the first proceeding that [they] should have been

asserted in that proceeding."[86]  Thus, the question is whether Citadel's tort claims

and Dolan's severance claims involve "the same transaction or connected series of

transactions . . . and whether the same evidence is needed to support both

claims."[87]  The short answers are they do not involve the same transactions and

different evidence is needed to support the claims.  As I have already explained,

the facts underlying Dolan's claims for severance are not related in time, space, or

origin to the facts underlying Citadel's tort claims.  Dolan's severance claims arose

primarily out of Suleman's January 2009 decision to unilaterally replace one of

Dolan's subordinates.  Citadel's claims, on the other hand, arise primarily out of an

alleged conversation between Dolan, Hannity, and Bryce shortly after Citadel

---

[86]      *Pike*, 266 F.3d at 91.  *See also* Restatement (Second) of Judgments
§ 22 cmt a (observing that a counterclaim is generally not compulsory when "it
does not arise out of the same transaction or occurrence as the *plaintiff's* claim"
(emphasis added)); Fed. R. Civ. P. 13(a) (making compulsory any counterclaim
that "arises out of the transaction or occurrence that is the subject matter of the
*opposing* party's claim" (emphasis added).

[87]      *Pike*, 266 F.3d at 91 (quotation marks omitted).

purchased the Major Market Station Group in June 2007. Further, it is worth

observing that Dolan argued in the arbitration that Radio Networks's misconduct

defense was not timely because it arose out of events that took place months before

Dolan initiated the arbitration.[88] In a complete one-eighty, Dolan now asserts that

the misconduct allegations are inextricably tied to the Agreement.

Under the Restatement (Second) of Judgments, "[w]here the

defendant may interpose a claim as a counterclaim but he fails to do so, he is not

thereby precluded from subsequently maintaining an action on that claim" unless:

> (a) The counterclaim is required to be interposed by a
> compulsory counterclaim statute or rule of court, or
>
> (b) The relationship between the counterclaim and the
> plaintiff's claim is such that successful prosecution of the
> second action would nullify the initial judgment or would
> impair rights established in the initial action.[89]

As to the first exception, Dolan has not pointed to and the Court is not

aware of any statute or rule that required Radio Networks to assert its claims

---

[88]   *See* Pet. Opp. at 1 ("RN seeks to evade its obligation to pay Dolan the severance payments mandated in the Letter Agreement by . . . belatedly raising an issue of alleged misconduct that occurred in August 2008, more than six months before Dolan invoked his right to severance.").

[89]   Restatement (Second) of Judgments § 22. *Accord Pace v. Perk*, 440 N.Y.S.2d 710, 720 (2d Dep't 1981) ("In New York all counterclaims are permissive and since the Paces asserted the subject matter of their present claim only as a defense and not a counterclaim in the foreclosure action, the doctrine of *res judicata* in the sense of claim preclusion does not foreclose the maintenance of the instant suit. (citations omitted)).

against Dolan as counterclaims in the arbitration proceeding.  In fact, there are no

compulsory counterclaims under either New York law or the American Arbitration

Association's Employment Arbitration Rules.[90]

        As to the second exception, Dolan argues a judgment in this litigation

"might 'impair or destroy' rights established in the arbitration [because a]ny

arbitral award in Dolan's favor necessarily would mean that no 'cause' for

termination had existed."[91]  Dolan misconstrues the arbitration proceeding.  The

arbitrator made no determination as to whether Dolan committed misconduct or

whether Radio Networks would have had cause to terminate him.  Rather, when

Radio Networks withdrew the misconduct defense, cause was no longer an issue.

The only issue at the arbitration hearing was whether Dolan was constructively

discharged, and the facts underlying Dolan's constructive discharge are distinct in

time, space, origin, motivation from the facts underlying Citadel's present claims.

---

[90]    *See* N.Y. C.P.L.R. § 3019(a); American Arbitration Association,
Employment Arbitration Rules and Mediation Procedures 4(b)(iii)(1) (Sept. 1,
2007) (providing only that the respondent "[*m*]*ay* file a counterclaim" following
receipt of the arbitration demand (emphasis added)).  *See also Pike*, 266 F.3d at 91
("[S]howing that the applicable procedural rules did not permit assertion of the
claim in question in the first action of course also suffices to show that the claim is
not barred in the second action."); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280,
287 (2d Cir. 2002) ("[R]es judicata does not bar subsequent litigation when the
court in the prior action could not have awarded the relief requested in the new
action.").

[91]    Def. Mem. at 16.

## V.   CONCLUSION

For the forgoing reasons, Dolan's motion to dismiss or in the alternative for summary judgment is denied.  The Clerk of Court is directed to close this motion (Document # 8).  Dolan shall file an answer to the Amended Complaint by January 11, 2010.  A status conference is scheduled for January 5, 2010 at 4:30 p.m.  This conference shall also serve as the Initial Conference in *Dolan v. Radio Networks, LLC*, 09 Civ. 9828 (SAS).


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 21, 2009

27

## - Appearances -

**For Plaintiff:**

Sarah E. Bouchard, Esq.
Erica E. Flores, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

Melissa C. Rodriguez, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

**For Defendant:**

Robert Kraus, Esq.
Pearl Zuchlewski, Esq.
Jeremy Freedman, Esq.
Kraus & Zuchlewski LLP
500 Fifth Avenue, Suite 5100
New York, NY 10110
(212) 869-4648

28